UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| STEVEN PRIMM | * | DOCKET NO.  10-0354 |
|---|---|---|
| VERSUS | * | JUDGE ROBERT G. JAMES |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons given below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### BACKGROUND & PROCEDURAL HISTORY

On January 4 ,2008, Steven Primm filed the instant claim for Disability Insurance benefits and Supplemental Security Income. (Tr. 74-78, 79-85). He alleged disability since January 1, 2005, due to being a "slow learner." (Tr. 96)[1]. The claim was denied at the initial

---

[1] In his brief, plaintiff alleges that he applied for SSDI and SSI due to "mental retardation and hypertension." Doc. # 17, p. 1. However, a thorough review of plaintiff's application for SSDI and SSI reveals that his application for benefits was based solely on his mental status; no claims were ever made based on hypertension. (Tr. 74-85). During the hearing with the ALJ, plaintiff confirmed that he had been "diagnosed with mental retardation," and that his mental retardation was "the only problem" plaintiff claimed to have. (Tr. 18). In his Request for Hearing by an ALJ, dated June 9, 2008, plaintiff writes that he "cannot find work because of my condition. No one will hire me. I have got to get something to live on. My teacher said I should [have] been drawing a check since I was 18 years old. I cannot help how I am." (Tr. 44). In his Request for Review of Hearing Decision / Order, dated May 1, 2009, plaintiff writes that he has "a memory disability. I can't find a job or get a job. I need disability real bad." (Tr. 73).

stage of the administrative process. (Tr. 39-42). Thereafter, Primm requested and received a January 9, 2009, hearing before Administrative Law Judge ("ALJ") Scott Staller. (Tr. 11-26, 39-42, 44). Harris N. Rowzie, an impartial vocational expert ("VE"), also testified at the hearing. (Tr. 23-25).

In a May 1, 2009, written decision, the ALJ determined that Primm was not disabled under the Act, finding that prior to his date last insured, Primm had a severe impairment of mental retardation that the ALJ considered under the requirements of 12.05, "Part A," but that Primm's moderate limitations "in several areas of functioning do not rise to the level of severity required by "Part B," "Part C," and/or "Part D." (Tr. 36). The ALJ defined moderate limitations to mean "there are some moderate limitations but the person can still perform the task satisfactorily." *Id.* Thus, the ALJ determined that Primm has the "residual functional capacity to perform the full range of work at all exertional levels" with certain moderate non-exertional limitations. (Tr. 35-37, 134-136).

The Appeals Council issued a written notice dated December 31, 2009, declining Primm's requested review of the ALJ's decision. (Tr. 1-4). Therefore, the ALJ's January 9, 2009 decision became the final decision of the Commissioner.

On March 3, 2010, Primm sought review before this court. He alleges the following error(s):

    (1)      The Appeals Council committed reversible error in failing to remand this matter to the ALJ for consideration of the newly submitted evidence indicating that Listing 12.05C was met or equaled.

    (2)      Plaintiff did not receive a full and fair hearing because he did not knowingly and intelligently waive his right to counsel and was prejudiced by the ALJ's failure to develop a full and fair record.

    (3)      The ALJ committed reversible error in failing to comply with the required

technique for analyzing mental impairments found at 20 C.F.R. § 404.1520a.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §

423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any

step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## ANALYSIS

**I.      Appeals Council's Denial of Review**

Plaintiff argues that the Appeals Council was required to remand the case to the ALJ in order for the ALJ to properly consider "newly submitted evidence."  Doc. # 17, p. 7.  Plaintiff contends that, after the hearing with the ALJ, plaintiff's newly-obtained counsel provided evidence to the Appeals Council "documenting the presence of impairments which appear to satisfy the requirement of an 'impairment imposing an additional and significant work-related limitation of function.[2]'" *Id.* at p. 8 (citing Listing 12.05C).  Therefore, the Appeals Council erred

---

[2] Listing 12.05 requires the following:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> Or
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> Or
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> Or
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at

in not issuing a decision awarding benefits, or remanding the matter to the ALJ for further development.  Doc. # 17 at p. 8.

Plaintiff cites *Higginbotham v. Barnhart* in support of his argument that the Appeals Council committed reversible error in failing to remand plaintiff's claim upon consideration of the newly submitted evidence.  *Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005).  However, *Higginbotham* does not stand for the proposition that, where new evidence is offered to the Appeals Council, the Council must remand the claim to the ALJ.  Rather, the Fifth Circuit held that newly submitted evidence is considered part of the Commissioner's "final decision," and should therefore be considered by the District Court on appeal.  *Higginbotham v. Barnhart*, 405 F.3d at 337.  Therefore, the *Higginbotham* Court remanded the case not because the Appeals Council did not consider the new evidence, but because the **District Court** neglected to consider the newly submitted evidence in making its ruling.  *Id.* at 337-338.

In any event, plaintiff fails to demonstrate how the evidence submitted to the Appeals Council would have changed the ALJ's ruling.  The new evidence consisted of a July 14, 2009, progress note from E.A. Conway emergency services.  (Tr. 157).  According to the note, plaintiff came to the emergency room after feeling "hot and dizzy" "a few days ago," and that he had experienced those feelings twice in the "past couple weeks."  *Id.*  Plaintiff explained that he felt "pretty good now," and that he wanted "to find out why" he had the feelings of dizziness earlier.  *Id.*  Plaintiff stated that he was doing yard work when he felt hot and dizzy; the note provides that

---

        least two of the following:
        1. Marked restriction or activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05.

the heat indices in the area were over 100 degrees during the time in question. *Id.*

The note also provides that plaintiff was diagnosed with hypertension; the note is silent as to whether the hypertension caused any functional limitations. (Tr. 157). The note also fails to indicate whether plaintiff was prescribed any treatment or medication for his hypertension. The lack of physician-assessed limitations substantially supports the ALJ's decision. *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (citing *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989). Finally, the note reveals that plaintiff also presented with "marked kyposis," or hunchback.[3] Again, the note does not suggest that this condition caused any functional limitations, required any type of treatment, or warranted a referral to another physician. (Tr. 157). As such, plaintiff has not proven that the Appeals Council committed reversible error in failing to remand plaintiff's matter to the ALJ on the basis of the E.A. Conway note.

## II.     Waiver of Right to Counsel

Social security claimants have a statutory right to counsel at any social security hearing. 42 U.S.C. § 406 (2003). A claimant is entitled to receive adequate notice of his right to counsel at an administrative hearing. *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003) (citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996). "Adequate notice" requires that an ALJ apprise the claimant: "(a) how an attorney can assist claimant in the hearing; (b) sources of free counsel and possibility of contingency arrangements; and (c) limitation of attorney fees to twenty-five percent of past due benefits." *Gullett v. Chater*, 973 F.Supp. 614, 620 (E.D.Tex.1997) (citing *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir.1981)). After a claimant

---

[3] "Kyphosis" is defined as an "exaggerated outward curvature of the thoracic region of the spinal column resulting in a rounded upper back." Medline Plus, a Service of the U.S. National Library of Medicine and the National Institutes of Health, Medical Dictionary, available at http://www.nlm.nih.gov/medlineplus/mplusdictionary.html

receives written notice prior to the hearing, "[t]he ALJ should then provide oral notification at the hearing to ensure that a claimant who appears pro se at a hearing has been made aware of the options for obtaining counsel so that her or his waiver is knowingly and intelligently effected." *Id.* at 621 (citing *Frank v. Chater*, 924 F.Supp. 416, 426 (E.D.N.Y.1996)).

Plaintiff argues that the ALJ proceeded with the hearing without ensuring that plaintiff understood his right to counsel, and that he was voluntarily waiving that right. Given plaintiff's limited intellectual abilities, he continues, it was "particularly important" for the ALJ to ensure that plaintiff fully understood his right to counsel. Doc. # 17, p. 10.

There is no dispute that prior to the hearing, plaintiff had numerous notices regarding his right to representation and how to secure representation, should he desire. (Tr. 31, 41, 46-47, 55 (notices sent to plaintiff May 1, 2009, March 28, 2008, June 10, 2008, and December 8, 2008; all notices informed plaintiff that he had a right to representation and the necessary steps plaintiff could take to secure an attorney)). The notices informed plaintiff of the various legal groups in existence that could possibly represent him free of charge. *See* Notice of Unfavorable Decision (Tr. 31); Notice of Disapproved Claims (Tr. 39-42). The Social Security Administration provided plaintiff with its pamphlet entitled "Your Right to Representation" in advance of the hearing, on June 10, 2008. (Tr. 48-51). The pamphlet includes information concerning how plaintiff could seek representation, with a list of organizations that could represent plaintiff free of charge, if he qualified. *Id.* The pamphlet also included information on how plaintiff could obtain a private, non-attorney representative to represent him at the hearing. *Id.* Finally, the pamphlet detailed how much a representative could charge plaintiff, specifying that no more than 25 percent could ever be withheld from plaintiff's past-due benefits in order to pay a representative. *Id.*

Additionally, Primm himself signed a form entitled "Waiver of Representation by the Claimant," acknowledging that he understood his right and wished to proceed without representation. (Tr. 72). In the waiver–signed the date of the hearing, January 9, 2009–Primm further acknowledged receiving a list of organizations that provide legal services prior to receiving the notice of hearing. *Id.*

However, whether Primm validly waived his right to an attorney at the hearing is unclear. Although the ALJ notes in his decision that plaintiff "chose to appear and testify without the assistance of an attorney," despite being "informed of the right to representation," a reading of the transcript illustrates at least some confusion on the part of the plaintiff:

> ALJ: ...Now Mr. Primm, I see that you are unrepresented today. You signed the waiver of representation. At this point I need to know whether or not you want to proceed with the hearing without a representative.
>
> Claimant: This is a witness [*referring to his former teacher, who appeared on plaintiff's behalf*].
>
> ALJ: I understand that. You want to go forward with the hearing without anybody representing you.
>
> Witness: [*to plaintiff*] That's an attorney.
>
> Claimant: Yeah.
>
> ALJ: Yeah.
>
> Claimant: Well, I have no attorney.
>
> ALJ: Well, there are some attorneys. There are some non-attorneys that Social Security approves, too. The documents that we currently have are Exhibits 1A through 6F. Do you have any objection to those documents coming into the record?
>
> Claimant: No.

The text excerpted above is the only mention of plaintiff's right to counsel anywhere in

the transcript. While on the record, the ALJ did not ask plaintiff whether he had received the notices in the mail concerning his right to representation, nor did the ALJ ask plaintiff whether he understood the information contained in those notices regarding representation. *See* HALLEX I-2-6-52, 1993 WL 643033.

The importance of ascertaining whether plaintiff understood his right to counsel is magnified by the fact that, as the ALJ noted, plaintiff has "mild mental retardation," with a verbal IQ of 66, a performance IQ of 72, and a full scale IQ of 66. (Tr. 35). As such, the undersigned is not convinced that plaintiff, of his own volition, fully understood his right to representation at the hearing, or that plaintiff validly waived his right to an attorney.

Of course, the inquiry does not end upon a showing that plaintiff did not voluntarily waive his right to counsel, as Primm must also show resulting prejudice. *Brock v. Chater*, 84 F.3d at 729 n1. In the absence of counsel, the ALJ has a heightened duty to develop the record. *Castillo v. Barnhart*, 325 F.3d at 552-53. To establish prejudice, a claimant must point to "evidence that would have been adduced and that could have changed the result had [he] been represented by an attorney." *Castilllo, supra*. (citation omitted) (internal quotation marks omitted).

Here, plaintiff contends that he was prejudiced by his lack of counsel because the ALJ failed to fully develop the record. Doc. # 17, p. 13. Specifically, plaintiff argues that the ALJ failed to "follow up with Mr. Primm's testimony that he had 'almost passed out' and most likely requested a consultative examination." *Id.* However, there is nothing in the record that indicates plaintiff's feelings of dizziness and fatigue were caused by anything other than working outdoors in 100-plus degree temperature, as noted by medical personnel on the notes described *supra*. (Tr. 157).

Plaintiff also argues that, had he had an attorney at the hearing, the attorney could have asked the VE to consider Dr. David Williams' opinion that plaintiff "will have significantly more problems learning...a traditional work environment than the typical patient," and that plaintiff could not manage his own finances. (Tr. 136). However, the evidence presented at the hearing indicates that, while plaintiff may have difficulty with learning a new trade, he is capable of returning to his past relevant work. (Tr. 22-24). Plaintiff and his witness testified that he left his jobs not because of his being a "slow learner," but because employers had died, seasonal work had ended, and plaintiff did not like doing night work. (Tr. 14-15, 16-17). There is also no indication that plaintiff's inability to manage his finances prevented him from successfully performing any of his past relevant work, including work as a janitor and a chicken processor. (Tr. 16, 103). Further, on the Adult Function Report provided to the SSA, plaintiff himself indicated that he was able to pay bills, count change, and use a checkbook and money order. (Tr. 115). In short, plaintiff has not demonstrated prejudice due to the absence of counsel at his hearing. *Brock*, 84 F.3d at 728.

### III.     Steps One, Two and Three

At Step One of the sequential evaluation process, the ALJ determined that plaintiff had not engaged in substantial gainful activity since January 1, 2005, the alleged onset date. (Tr. 35). The ALJ found at Step Two that plaintiff had the severe impairment of mild mental retardation. (Tr. 35-36). However, the ALJ concluded that plaintiff's impairment was not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 36).

Plaintiff contends that the ALJ failed to comply with the required technique for evaluating mental impairments found at 20 C.F.R. § 404.1520a. Doc. # 17, p. 14. Specifically,

plaintiff argues that the "plain language of the regulations governing social security cases *requires* that the Commissioner follow a specific procedure for evaluating mental impairments.[4]" *Id.* (emphasis in original). The ALJ's failure to comply with these regulations, according to plaintiff, is another reason to remand the case.

Plaintiff argues that the ALJ "failed to analyze Mr. Primm's mental retardation according to the manner prescribed by the regulations" because the ALJ did not discuss "the frequency of any deficiencies of concentration, the impact of Mr. Primm's mental disorder on his social functioning or his daily activities, or whether he had ever experienced episodes of decompensation." Doc. # 17, p. 15-16. Pursuant to 20 C.F.R. § 404.1520a(e)(2), plaintiff argues, the ALJ is required, in his written decision, to make a specific finding as to the degree of limitations in each functional area:

> At the administrative law judge hearing and Appeals Council levels, and at the Federal reviewing official, administrative law judge, and the Decision Review Board levels in claims adjudicated under the procedures in part 405 of this chapter, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(2).

Plaintiff contends that, because the ALJ did not perform the required psychiatric review technique in his decision, plaintiff's claim must be remanded. Doc. # 17, pp. 14-17. However, in his decision, the ALJ explicitly noted that he "adopted" the state agency psychologists's

---

[4] 20 C.F.R. § 1520a provides the procedure for evaluating mental impairments. The regulations require the Commissioner to rate the degree of functional loss resulting from the mental impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 1520a(c)(3).

opinion. (Tr. 37, 149). Dr. David G. Atkins, Ph.D., completed the psychiatric review technique form ("PRTF") on March 26, 2008, and the ALJ afforded "great weight" to Dr. Atkins' opinion. (Tr. 37, 142-52). On page 11 of the PRTF, Dr. Atkins analyzes plaintiff's functional limitations as follows:

1. Restriction of Activities of Daily Living: Moderate

2. Difficulties in Maintaining Social Functioning: Mild

3. Difficulties in Maintaining Concentration, Persistence, or Pace: Moderate

4. Episodes of Decompensation, Each of Extended Duration: None

(Tr. 149).

Plaintiff cites *Kelly v. Chater* in support of his argument that the ALJ's failure to prepare a PRTF requires remand. *Kelly v. Chater*, 952 F.Supp. 419, 426 (W.D.Tex. 1996). However, in *Kelly v. Chater*, no PRTF was ever prepared, despite evidence of "severe mental impairment which renders plaintiff disabled." *Id.* at 426. In contrast, in the case *sub judice*, Dr. Atkins prepared a PRTF, as described *supra,* and his findings were adopted by the ALJ in his opinion. (Tr. 40). Thus, the ALJ's opinion complied with the provisions and requirements of 20 C.F.R. § 1520a.

## IV. Step Four

Finally, the ALJ determined that plaintiff is capable of performing his past relevant work as a janitor and poultry dresser. (Tr. 38). The ALJ noted that this work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id.* Plaintiff does not offer any arguments as to why he is unable to return to his past relevant work. While an ALJ has a duty to make a sufficient inquiry into a claim, the claimant retains the burden to establish that he is unable to perform past relevant work. *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990) (citations omitted).

## CONCLUSION

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Steven Primm was not disabled under the Social Security Act, is supported by substantial evidence and is free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 30th day of November, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE